NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHAMBERS OF<br>**SUSAN D. WIGENTON**<br>UNITED STATES DISTRICT JUDGE | MARTIN LUTHER KING COURTHOUSE<br>50 WALNUT ST.<br>NEWARK, NJ 07101<br>973-645-5903 |

February 18, 2021

Karina D. Fuentes, Esq.
Office of the Federal Public Defender
1002 Broad Street
Newark, New Jersey 07102
*Counsel for Defendant*

David Malagold, Esq.
Office of the United States Attorney
970 Broad Street, Suite 700
Newark, NJ 07102
*Counsel for Plaintiff*

### LETTER OPINION FILED WITH THE CLERK OF THE COURT

    **Re:**    *United States v. Laquan Reed*
            **Criminal Action No. 13-787-03 (SDW)**

Counsel:

Before this Court are Defendant Laquan Reed's ("Defendant") Motions for Compassionate Release under the First Step Act, 18 U.S.C. § 3582(c)(1)(A). (D.E 140, 143.) This Court having considered the parties' submissions, and for the reasons discussed below, denies Defendant's motions.

**DISCUSSION**

A.

Although a district court generally has limited authority to modify a federally-imposed sentence once it commences, *see United States v. Epstein*, No. 14-287, 2020 WL 1808616, at *2 (D.N.J. Apr. 9, 2020); *Dillon v. United States*, 560 U.S. 817, 825 (2010), the recently-enacted First Step Act ("FSA"), 18 U.S.C. § 3582(c)(1)(A)(i), permits district courts to grant compassionate release where there exist "extraordinary and compelling reasons" to reduce a sentence. The statute provides, in relevant part, that:

    (A) [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative

> rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c). As such, under the FSA, "a defendant seeking a reduction in his term of imprisonment bears the burden of establishing both that he has satisfied (1) the procedural prerequisites for judicial review, and (2) that compelling and extraordinary reasons exist to justify compassionate release." *Epstein*, 2020 WL 1808616, at *2. First, "a defendant seeking a reduced sentence must ask the [Bureau of Prisons ("BOP")] to do so on his or her behalf," and either "wait thirty days for the BOP to respond" or "exhaust all available administrative appeals after receiving an adverse decision." *United States v. McDonald*, Crim. No. 09-556, 2020 WL 3638280, at *3 (D.N.J. July 2, 2020) (citing *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020)). Then, a court may reduce an inmate's sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) "if the court finds that (1) extraordinary and compelling reasons warrant a reduction, (2) the reduction would be consistent with applicable policy statements issued by the Sentencing Commission,[1] and (3) the applicable sentencing factors under § 3553(a) warrant a reduction." *United States v. Sparrow*, Crim. No. 18-653, 2020 WL 4364328, at *2 (D.N.J. July 30, 2020) (citation omitted).

B.

On March 30, 2017, Defendant pled guilty to racketeering conspiracy consisting of murder conspiracy and attempted murder, in violation of N.J.S.A. §§ 2C:5-1 and 2C:2-6, and conspiracy to distribute one kilogram or more of heroin, in violation of 21 U.S.C. § 846. (D.E. 82.) On September 25, 2017, this Court sentenced Defendant to 264 months of imprisonment and five years of supervised release with special conditions. (D.E. 107.) Defendant is currently serving his sentence at the United States Penitentiary, Victorville ("Victorville USP") in California. (D.E. 143-1.)

On May 5, 2020, Defendant filed a *pro se* letter with this Court requesting relief under the FSA and the appointment of counsel. (D.E. 134.)[2] Defendant's newly assigned counsel wrote to the warden of Victorville USP on October 21, 2020, requesting compassionate release to home confinement under the FSA. (D.E. 143-1 at 1.) The warden presumably denied that request on November 2, 2020. (*See* D.E. 143-2.)

---

[1] The Sentencing Commission's relevant policy statement identifies medical conditions that meet the "extraordinary and compelling" requirement as those where the defendant is (i) suffering from a terminal illness, or (ii) suffering from a serious physical or medical condition, serious functional or cognitive impairment, or deteriorating physical or mental health because of the aging process, "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13, cmt. n.1(A).

[2] The request was dated April 20, 2020. (D.E. 134.)

Defendant filed a *pro se* motion for compassionate release on November 13, 2020. (D.E. 140.) Defendant subsequently tested positive for COVID-19 in early December, and he recovered well by December 27, 2020. (*See* D.E. 144, D.E. 150 at 18.) Defendant's counsel filed a supplemental motion on December 30, 2020, requesting that the remainder of his sentence be modified to supervised release and/or home confinement because Defendant's "chronic asthma, primary hypertension[,] and mental health issues" may cause severe effects from COVID-19. (D.E. 143 at 1–2.) On January 4, 2021, Defendant's counsel filed a supplemental letter brief, arguing that Defendant's positive COVID-19 test result does not render Defendant's motion moot because (1) Defendant may become reinfected, (2) Defendant may suffer long-term health consequences, and (3) Victorville USP's high infection rate places Defendant at continued risk of reinfection. (D.E. 144.) The Government filed a brief in opposition on January 27, 2021. (D.E. 150.)

C.

As more than 30 days have passed since Defendant's October 21, 2020, request to the warden for compassionate release, his motions are ripe for review on the merits. *See* 18 U.S.C. § 3582(c). In support of his motions, Defendant contends that he is at higher risk of serious illness from COVID-19 because of his asthma, hypertension, and mental health issues. (D.E. 143 at 2.) The Centers for Disease Control and Prevention (CDC) presently distinguish between medical conditions that place people at an increased risk of severe illness from COVID-19, and medical conditions that "might" place people at an increased risk. *See* CDC, *People with Certain Medical Conditions* (last updated Feb. 3, 2021), *https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html*. Adults with asthma and hypertension "might be at an increased risk of severe illness" from COVID-19. *Id.* Adults with mental health issues are not included in either category. *Id.*

This Court is sympathetic to Defendant's medical concerns regarding possible complications caused by COVID-19, but it will not grant his application because he has not established that "compelling and extraordinary reasons" justify his release. *See Epstein*, 2020 WL 1808616, at *2. Defendant has already been infected with and recovered from COVID-19 without suffering severe illness. (*See* D.E. 150 at 17–18.) Furthermore, Defendant is being adequately treated with medication for his asthma and hypertension. (*See id.* at 24.) Defendant's concern regarding possible reinfection is understandable, but the recent development of COVID-19 vaccines and the latest infection rate at the Victorville USP show signs of improvement. Victorville USP has 18 confirmed active cases as of February 16, 2021,[3] and the BOP has begun to administer the COVID-19 vaccine to its staff and inmates. (*See* D.E. 150 at 10.)

Furthermore, multiple courts in this District have denied compassionate release to inmates suffering from asthma and/or hypertension, despite the risk of COVID-19. *See, e.g.*, *United States v. Scalea*, Crim. No. 18-620, 2021 WL 395874, at *5–6 (D.N.J. Feb. 4, 2021) (finding that defendant's asthma and hypertension were not "extraordinary and compelling reasons . . . to warrant a sentence reduction"); *United States v Suiter*, Crim. No. 18-147, 2021 WL 84132, at *1 (D.N.J. Jan. 11, 2021) (denying defendant's motion for compassionate release despite his asthma);

---

[3] *See* Federal Bureau of Prisons, COVID-19 Update (last updated Feb. 16, 2021), www.bop.gov/coronavirus/.

*United States v. Ogunremi*, Crim. No. 18-586, 2021 WL 82255, at *8 (D.N.J. Jan. 8, 2021) (noting that defendant's asthma, hypertension, and other mental and physical health issues are "unlikely to establish the 'compelling and extraordinary reasons' necessary to justify early release"); *United States v. Williams*, Crim. No. 17-0379, 2021 WL 37536, at *1, *5 (D.N.J. Jan. 4, 2021) (denying compassionate release where defendant suffered from various mental and physical health conditions because the conditions did not "appear[] on the CDC's published lists as either certainly or potentially placing [defendant] at an increased risk of severe illness from COVID-19").

Even if this Court were to find that Defendant's health conditions constituted an extraordinary and compelling reason for release, it would still deny his motions because the applicable sentencing factors under 18 U.S.C. § 3553(a) weigh against his early release.[4]  *See United States v. Horvath*, Crim. No. 15-400, 2020 WL 7074379, at *1, *3–4 (D.N.J. Dec. 3, 2020) (concluding that, while defendant's hypertension, chronic asthma, and other health issues constituted an "extraordinary and compelling" reason for release, the sentencing factors weighed against compassionate release).  Defendant has a lengthy criminal history, and he has earned both criminal convictions and BOP disciplinary sanctions for his conduct while incarcerated.  (*See* D.E. 150 at 27.)  In fact, he attempted murder while he was on probation.  (*See id.*)  Defendant has served only a small portion of his sentence, and modifying his sentence to supervised release or home confinement, when he is unable to comply with supervision while in custody, would fail to "reflect the seriousness of the offense," "promote respect for the law," or "provide just punishment for the offense."  *See* 18 U.S.C. § 3553(a)(2)(A).  Considering the gravity of his crimes, such a sentence modification would also fail to protect the public or provide adequate deterrence.  *See* 18 U.S.C. § 3553(a)(2)(B)–(C).  This Court will therefore leave its original sentence intact.

## **CONCLUSION**

For the foregoing reasons, Defendant's Motions for Compassionate Release are **DENIED**.  An appropriate order follows.

    /s/ Susan D. Wigenton  
**SUSAN D. WIGENTON, U.S.D.J.**

Orig:   Clerk  
cc:     Parties

---

[4] Furthermore, this Court considered Defendant's asthma and mental health conditions, as disclosed in his presentence report, when it imposed its original sentence.